[943 NYS2d 400]

Hugo Gomez et al., Respondents, v Brill Securities, Inc., et al., Appellants.

First Department, March 15, 2012

### APPEARANCES OF COUNSEL

*Mound Cotton Wollan & Greengrass*, New York City (*Robert S. Goodman, Barry R. Temkin* and *Diana E. McMonagle* of counsel), for appellants.

*Joseph, Herzfeld, Hester & Kirschenbaum LLP*, New York City (*Michael D. Palmer, Matthew Kadushin* and *Charles Joseph* of counsel), for respondents.

### OPINION OF THE COURT

ROMÁN, J.

When parties expressly agree to arbitrate their disputes we enforce their agreement and compel arbitration. However, the issue of whether to compel arbitration turns on the language of the agreement between the parties. Therefore, when an agreement to arbitrate expressly precludes arbitration under certain circumstances, and one of those enumerated circumstances exists, a party cannot be compelled to arbitrate. In this case, where the arbitration agreement expressly precludes arbitration if the otherwise arbitrable claims are brought via a plenary class action, we cannot compel arbitration since the agreement proscribes it.

This class action seeks declaratory relief and monetary damages for violation of 12 NYCRR 142-2.2 and Labor Law § 191 (1) (c), and §§ 193 and 198-b. Plaintiffs allege that they, along with all members of the putative class, were brokers employed by defendant Brill Securities, Inc.,[1] a full-service broker-dealer offering a comprehensive range of financial and wealth management services for retail investors. While so employed, plaintiffs allege that despite working in excess of 40 hours per week, they were not paid the requisite overtime wages, in violation of 12 NYCRR 142-2.2; that defendants made impermissible wage deductions from their earned wages/commissions, in violation of Labor Law § 193; that defendants made illegal wage deductions from their wages/commissions, in violation of Labor Law § 198-b; and that defendants failed to pay them their wages/commissions as agreed, in violation of Labor Law § 191.

Plaintiffs are registered representatives in the securities industry. Each plaintiff was required to, and did, execute a Uniform Application for Securities Industry Registration or Transfer (Form U-4). Pursuant to section 15A (5) of Form U-4, plaintiffs "agree[d] to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules . . . of [the Financial Industry Regulatory Authority (FINRA)]" (emphasis omitted). FINRA Manual rule 13204 (d) prohibits arbitration of class action claims and prohibits enforcement of "any arbitration agreement against a member of a . . . putative class action with respect to any claim that is the subject of the . . . class action" until certain conditions, inapplicable here, are met.

Before the initiation of this action, two of the plaintiffs brought an action against the same defendants in the United States District Court for the Southern District of New York, asserting, via a class action, the state law claims alleged here, as well as a federal claim for overtime pay under the Fair Labor Standards Act (29 USC § 201), brought via a collective action (29 USC § 216 [b]; *see Gomez v Brill Sec., Inc.*, 2010 WL 4455827, 2010 US Dist LEXIS 118162 [SD NY 2010]). Asserting that plaintiffs' claims could not be brought via a plenary action, defendants moved to dismiss the federal action, or, alternatively, to stay the state claims and compel arbitration of plaintiffs'

---

1. The other defendants are Robert Brown, chief executive officer and owner of Brill Securities, Inc. (Brill), Nicholas Brown, chief financial officer and owner of Brill, Jonathan Kurtin, president and owner of Brill, and David Nutkis, vice-president and chief operating officer of Brill.

claims pursuant to the Fair Labor Standards Act (FLSA). Implicitly finding that the state class action claims were not arbitrable, the court stayed those claims and compelled arbitration of plaintiffs' claims pursuant to the FLSA. In compelling arbitration of the claims pursuant to the FLSA, the court found that while the agreement between the parties precluded arbitration of arbitrable claims brought by class action, "[t]here are significant differences between an opt-out class action and an opt-in FLSA collective action" (2010 WL 4455827, *2, 2010 US Dist LEXIS 118162, *3-4). After the court issued its decision, plaintiffs voluntarily dismissed the federal action.

Plaintiffs then commenced this action. Shortly thereafter, defendants moved to dismiss this action on grounds that it was barred by the doctrine of res judicata (CPLR 3211 [a] [5]) and that it was barred by documentary evidence (CPLR 3211 [a] [1]), i.e., the agreement. Alternatively, defendants sought an order pursuant to CPLR 7503 (a) compelling arbitration. Plaintiffs opposed defendants' motion and after oral argument the motion court denied defendants' motion in its entirety. The instant appeal then ensued.

■ Contrary to defendants' assertion, since the order issued by the District Court did not make any determination on the merits as to the state law claims, it has no res judicata effect on this action. The doctrine of res judicata serves to preclude a party from relitigating issues of fact and law decided in a prior proceeding. Specifically "as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (*Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]). By precluding the relitigation of redundant claims, res judicata promotes judicial economy and conserves judicial resources (*id.*). Since res judicata precludes relitigation of issues actually litigated and resolved in a prior proceeding, the party seeking to invoke the doctrine of res judicata must demonstrate that the critical issue in a subsequent action was decided in the prior action and that the party against whom estoppel is sought was afforded a full and fair opportunity to contest such issue (*Matter of New York Site Dev. Corp. v New York State Dept. of Envtl. Conservation*, 217 AD2d 699, 700 [1995]). Here, the District Court, which stayed plaintiffs' state law claims, held by implication that plaintiffs' state law claims—the very claims they now assert—could not be arbitrated. Thus, far from

precluding this action, the District Court's order bolsters plaintiffs' contention that arbitration of these claims is barred by the agreement between the parties and further belies defendants' res judicata claim. Moreover, the District Court's order cannot have a preclusive effect in this action insofar as the issue decided there—that plaintiffs must arbitrate their claims pursuant to the FLSA because under federal law those claims could not be brought by class action and were therefore not exempt from arbitration by the agreement—has no applicability here since nothing bars plaintiffs from bringing their *state* claims, pursuant to 12 NYCRR 142-2.2, by class action. To that end, we are not persuaded by defendants' assertion that insofar as 12 NYCRR 142-2.2 incorporates sections of the FLSA by reference, the District Court's order compelling arbitration of plaintiffs' prior FLSA claim bars, on grounds of res judicata, plaintiffs' instant claim pursuant to 12 NYCRR 142-2.2. Notably, 12 NYCRR 142-2.2 only incorporates two sections of the FLSA, namely, 29 USC §§ 207 and 213, and critically unlike the FLSA, 12 NYCRR 142-2.2, does not, as noted above, preclude a class action suit. Thus, there is no substantial similarity between the prior FLSA claim and the current claim pursuant to 12 NYCRR 142-2.2 so as to invoke the doctrine of res judicata.

■ Insofar as, here, the agreement to arbitrate, by its very terms, clearly precludes arbitration when arbitrable claims are brought as a class action, plaintiffs cannot be required to arbitrate their class action claims. While

> "[i]t has long been this State's policy that, where parties enter into an agreement and, in one of its provisions, promise that any dispute arising out of or in connection with it shall be settled by arbitration, any controversy which arises between them and is within the compass of the provision must go to arbitration" (*Matter of Exercycle Corp. [Maratta]*, 9 NY2d 329, 334 [1961]), whether arbitration is mandated, however, turns entirely on the language of the agreement between the parties (*Matter of Waldron [Goddess]*, 61 NY2d 181, 183 [1984] ["It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes" (internal quotation marks omitted)]; *Matter of Acting Supt. of Schools of Liverpool Cent.*

*School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 512 [1977]; *Gulf Underwriters Ins. Co. v Verizon Communications, Inc.*, 32 AD3d 709, 710 [2006]; *Harris v Shearson Hayden Stone*, 82 AD2d 87, 95 [1981], *affd* 56 NY2d 627 [1982]).

Accordingly, since an agreement to arbitrate is a contract, and when clear, shall "be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]; *First Options of Chicago, Inc. v Kaplan*, 514 US 938, 943 [1995] ["arbitration is simply a matter of contract between the parties"]), while parties who clearly and expressly agree to arbitrate shall be so compelled, parties who unequivocally agree to forgo arbitration under certain circumstances cannot be compelled to arbitrate when those enumerated circumstances exist.

Here, the agreement between the parties makes it exceedingly clear that arbitration shall be governed by the rules promulgated by FINRA. FINRA Manual rule 13204 (d) prohibits arbitration of class action claims and specifically, prohibits enforcement of "any arbitration agreement against a member of a . . . putative class action with respect to any claim that is the subject of the . . . class action" until certain conditions, inapplicable here, are met. Accordingly, based on the parties' own agreement, which incorporates by reference FINRA Manual rule 13204 (d), arbitration of this class action suit is barred (*Velez v Perrin Holden & Davenport Capital Corp.*, 769 F Supp 2d 445, 446-447 [SD NY 2011] [plaintiff's state law claims, brought as a class action, alleging that defendants failed to pay him overtime, commissions, and timely wages not arbitrable insofar as the agreement to arbitrate stated that arbitration would be governed by FINRA rules and FINRA Manual rule 13204 (d) precludes arbitration of claims brought by class action]; *see Olde Discount Corp. v Hubbard*, 4 F Supp 2d 1268, 1271 [D Kan 1998], *affd* 172 F3d 879 [10th Cir 1999]).

Contrary to defendants' contention, neither our holding in *Harris* nor the holdings by the United States Supreme Court in *Preston v Ferrer* (552 US 346 [2008]) and *AT&T Mobility LLC v Concepcion* (563 US —, 131 S Ct 1740 [2011]) warrant reversal of the motion court's decision and compulsion to arbitrate. In *Harris*, a case decided before the establishment of FINRA[2] and the rules it promulgated, and where the agreement to arbitrate

---

2. FINRA succeeded the National Association of Securities Dealers, Inc. (NASD) in 2007 and while NASD Manual rule 10301 (d) previously and

did not contain an exemption from arbitration for claims brought by class action, we held that the parties to that action were bound by a clear agreement to arbitrate disputes and that a class action suit alleging causes of action subject to arbitration would not preclude arbitration (*Harris* at 95). Here, in adherence to *Harris*, in staying arbitration we simply enforce the express agreement between the parties, which, by incorporating by reference FINRA Manual rule 13204 (d), precludes arbitration when arbitrable claims are brought by class action (*Nielsen v Piper, Jaffray & Hopwood, Inc.*, 66 F3d 145, 148-149 [1995], *cert denied* 516 US 1116 [1996] [arbitration stayed where agreement to arbitrate was governed by rules in chosen arbitration forum, one of which, NASD rule 12 (d), precluded arbitration when arbitrable claims were brought by class action]). *Preston* is also inapposite since in that case, the United States Supreme Court, reiterating that the law requires that parties be bound by their express arbitration agreements, held that "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA [Federal Arbitration Act] supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative" (*Preston* at 359). Here, arbitration is not being stayed by virtue of any state law, but because of an exclusion to arbitration in the agreement itself. *AT&T Mobility LLC* is similarly inapposite since in that case the Court, reiterating that an agreement to arbitrate must be enforced as written, simply held that such an agreement, freely entered into, cannot be vitiated by a state law deeming unconscionable the preclusion of a right antithetical to the goals of arbitration as envisioned by the FAA (*AT&T Mobility LLC*, 563 US at —, 131 S Ct at 1749-1750 [California law which held that contracts which precluded class action suits were unconscionable could not preclude arbitration of claims even though the agreement itself violated California law by mandating arbitration and precluding class action suits]).

Respectfully, the dissent reaches its conclusion the only way it can, by prematurely determining, absent a motion for such relief, that this suit and the claims asserted do not merit class action certification and then by failing to recognize that this case raises an issue never previously addressed by New York law.

similarly proscribed arbitration of any claims brought by class action, that rule did not take effect until 1992, approximately 10 years after our decision in *Harris*.

First, where the defendants shortly after being served with the summons and complaint, in lieu of serving an answer, moved to dismiss it, plaintiffs have not yet moved for class action certification pursuant to CPLR 902[3] and it is thus wholly improper, and in fact impermissible, for us to offer any opinion with respect to whether class certification will ultimately be or ought to be granted. Accordingly, whether class certification will be denied should not play any role in the determination of this appeal. Moreover, whether the claims here qualify for class certification is an argument notably absent from any of the briefs submitted on appeal and we should therefore refrain from proffering any opinion on this issue (*Misicki v Caradonna*, 12 NY3d 511, 519 [2009] ["We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made"]).

Second, like the dissent, we acknowledge this State's strong preference for compelling arbitration when parties expressly agree to arbitrate. Where we part ways, however, is in the dissent's failure to recognize that this is a case of first impression, such that cases like *Harris* and *State of New York v Philip Morris Inc.* (308 AD2d 57 [2003], *lv denied* 1 NY3d 502 [2003]), which indeed compelled arbitration despite the existence of plenary class action suits, cannot control the outcome. Simply restated, in these cases there existed no agreement precluding arbitration if claims were brought via class action. Here, by contrast, we have an agreement precluding arbitration if otherwise arbitrable claims are brought via class action. As such, until such time as class certification is denied, we cannot compel arbitration (*Velez* at 446-447; *Olde Discount Corp.* at 1271).

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered June 13, 2011, which denied defendants' motion to dismiss the complaint or, in the alternative, to compel arbitration and stay the action pending arbitration, should be affirmed, with costs.

---

3.  CPLR 902 states that
    "[w]ithin sixty days after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the plaintiff shall move for an order to determine whether [the class action] is to be so maintained . . . The action may be maintained as a class action only if the court finds that the prerequisites under section 901 have been satisfied."

SWEENY, J. (dissenting in part). I agree with the majority that the doctrine of res judicata has no applicability in this case, as the Federal District Court made no determination regarding the merits of the state law claims. Where we part company is on the question of whether plaintiffs may properly assert their claims as a class action. It is abundantly clear from the record that plaintiffs are attempting, as they did in their federal court action, to improperly utilize the vehicle of a class action to avoid their written agreement to arbitrate their claims. I must therefore dissent.

The facts of this case are essentially not in dispute. Plaintiffs, former registered representatives at defendant securities firm which consists of approximately 50 associates, were commission-only retail stock brokers who claim they are owed overtime wages and other compensation from defendants. Plaintiffs are registered with the Financial Industry Regulatory Authority (FINRA), a self-regulatory agency under the U.S. Securities and Exchange Commission. All registered securities representatives, including the named and putative plaintiffs, must sign a Uniform Application for Securities Industry Registration or Transfer, known as a Form U-4.[1] Section 15A (5) of this form provides, in pertinent part: "I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules . . . of [FINRA] as may be amended from time to time" (emphasis omitted). FINRA Manual rule 13200 (a) provides that

> "[e]xcept as otherwise provided in the Code [of Arbitration Procedure for Industry Disputes, rule 13100 (f)], a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> "• Members;
>
> "• Members and Associated Persons; or
>
> "• Associated Persons."

FINRA Manual rule 13204 excludes class actions from the requirement of mandatory arbitration of disputes.

On or about April 27, 2010, plaintiffs Gomez and Gabiam commenced an action against defendants in the United States

---

1. There is no dispute that all parties are members of FINRA and that its rules are incorporated by reference in Form U-4.

District Court for the Southern District of New York, combining state claims identical to those brought here, and a federal claim for overtime pay under the Fair Labor Standards Act (FLSA). The FLSA claim was the sole basis of federal jurisdiction and was brought as a "collective action" pursuant to FLSA § 16 (b) (29 USC § 216 [b]), on behalf of all Brill employees employed as stockbrokers in New York during the three years preceding the commencement of the action. The accompanying state claims were brought as a class action.

Defendants moved to dismiss the federal action or, alternatively, to compel arbitration of the FLSA claim and either dismiss the state law claims by declining jurisdiction or stay the state law claims pending resolution of the arbitration. Plaintiffs opposed the motion, arguing that FINRA's restriction against compelling arbitration of class actions extended to their FLSA collective action claim, especially since the state and federal claims were "virtually identical," and if forced to arbitrate their federal claim, they would "be barred by principles of collateral estoppel from being part of the state class action."

The District Court granted defendants' motion to compel arbitration of the FLSA claim and stayed the action pending resolution of such arbitration, finding that the FLSA collective action was not a "class action" for purposes of FINRA Manual rule 13204 and thus, was required to be arbitrated pursuant to the provisions of Form U-4. Significantly, the court rejected plaintiffs' argument that compelling arbitration of the FLSA claim would interfere with their state law claims which were "virtually identical," holding in pertinent part:

> "[T]he Court rejects this attempt to circumvent the arbitration of plaintiffs' FLSA claim . . . finding that to hold otherwise would allow plaintiffs to avoid arbitration and litigate in federal court so long as their FLSA claim may also be styled as a state law class action claim . . . Such an outcome is inconsistent with plaintiffs' obligations under the Form U-4 and the FINRA rules incorporated therein." (*Gomez v Brill Sec., Inc.*, 2010 WL 4455827, *2, 2010 US Dist LEXIS 118162, *5 [SD NY 2010].)

Thereafter, plaintiffs voluntarily discontinued the federal action without prejudice, stipulating that any FLSA claims brought in the future would be subject to arbitration. They then filed the present action via a class action complaint. The parties to this action are identical to those in the federal action with the exception of an additional plaintiff, Kwesi Moore, and

the complaint alleges essentially identical causes of action as those alleged in the state law claims in their federal complaint.

The District Court's reasoning that plaintiffs' claims were a not so subtle attempt to circumvent the arbitration provisions of Form U-4 and the FINRA rules is compelling and equally applicable here. The result should be the same.

An appropriate starting point would be a review of the role arbitration plays in the judicial system.

There is a strong public policy "supporting arbitration and discouraging judicial interference with either the process or its outcome" (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO,* 99 NY2d 1, 6 [2002]), particularly when used as a means of settling labor disputes (*see Matter of Town of Haverstraw [Rockland County Patrolmen's Benevolent Assn.],* 65 NY2d 677, 678 [1985]; *Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, Town of Huntington,* 33 NY2d 229, 236 [1973]).

There is no question, and the plaintiffs do not challenge the validity of the arbitration provisions of the FINRA rules as incorporated into Form U-4. Rather, plaintiffs follow the same playbook as used in the federal court by casting their complaint as a class action in order to avoid their obligation to arbitrate under the provisions of the FINRA rules to which they agreed.

The fact that there are multiple plaintiffs and potential plaintiffs does not prevent these issues from being arbitrated. FINRA Manual rule 13312 permits multiple claimants to participate in a single arbitration.[2] Thus, FINRA provides an appropriate forum to hear plaintiffs' claims in an expeditious manner, before an arbitrator who has expertise in the securities industry. Given the limited size of this class, there is no justification to argue the class action method is superior to other methods of adjudication under CPLR 901 (a) (5), as will be discussed infra.

The majority makes the curious argument that the federal court, by staying the state law claims, implicitly found those claims to be outside the scope of arbitration. There is nothing in

---

2. FINRA Manual rule 13312 (a) (formerly NASD Manual rule 13312 [a]) provides:

> "One or more parties may join multiple claims together in the same arbitration if the claims contain common questions of law or fact and:
> "• The claims assert any right to relief jointly and severally; or
> "• The claims arise out of the same transaction or occurrence, or series of transactions or occurrences."-

the record to support this assumption. Although not directly referenced by the federal court in its decision, the Federal Arbitration Act (9 USC § 3) mandates a stay of the trial of any causes of action, pending completion of arbitration on any other cause of action.[3] As noted, the federal court found that plaintiffs' use of the federal procedural vehicle of a "collective action" was essentially an attempt to avoid its obligations to arbitrate their claims. In holding the FLSA claims to be arbitrable, the court was required to stay the state court claims. No determination was made or inferred with respect to the arbitrability of these claims, despite the fact that plaintiffs argued in the federal action that their FLSA and state claims were "virtually identical." The result, as the majority rightfully determined, was that defendants' argument that this action is precluded by the doctrine of res judicata is unavailing.

An examination of the statutory requirements for a proper class action is also in order.

CPLR 901 (a) sets forth criteria which a court must consider in certifying a class action:

> "1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

> "2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

> "3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

> "4. the representative parties will fairly and adequately protect the interests of the class; and

> "5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The party moving for class action certification has the burden of satisfying all five criteria (*Godwin Realty Assoc. v CATV*

---

**3.** 9 USC § 3 provides as follows:
"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement" (emphasis added).

*Enters.*, 275 AD2d 269 [2000]). Although these statutory criteria should be liberally construed (*Englade v HarperCollins Publs.*, 289 AD2d 159 [2001]), such construction should not be utilized as a license to evade contractual obligations to arbitrate disputes (*see* 82 NY Jur 2d, Parties § 247; *Harris v Shearson Hayden Stone*, 82 AD2d 87, 91 [1981], *affd* 56 NY2d 627 [1982]).

Here, although plaintiffs arguably meet the numerosity requirement of CPLR 901 (a) (1) (*see e.g. Gilbert v Hamilton*, 35 AD2d 715 [1970], *affd* 29 NY2d 842 [1971] [where we held that an action for the equitable dissolution of a corporation could be maintained as a class action even though the plaintiff class consisted of only five persons]), they certainly do not meet the requirements of CPLR 901 (a) (5). The purported class action is clearly not superior to any other available methods of fairly and efficiently resolving this controversy.

The policy of this State "favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties" (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91, 95 [1975]). Given the limited size of this class and the issues involved, there is no justification to argue the class action method is superior to other methods of adjudication. This purported class action does not further judicial economy, particularly since, as noted, FINRA rules provide for the arbitration of multiple party claims. Because plaintiffs do not meet the requirement of CPLR 901 (a) (5), class action certification must be denied (*see Geiger v American Tobacco Co.*, 277 AD2d 420, 421 [2000], *lv dismissed* 96 NY2d 754 [2001]).

Most importantly, the majority overlooks the fact that CPLR article 9 is merely a procedural provision designed as a method of enforcing substantive law. By contrast, CPLR article 75 is substantive law, particularly because arbitration is rooted in contract law.

*State of New York v Philip Morris Inc.* (308 AD2d 57, 67 [2003], *lv denied* 1 NY3d 502 [2003]) is instructive in this regard. In reversing the motion court's determination to grant class action certification, we held that the order in question

> "rests on the assumption that, if CPLR articles 9 and 75 conflict, the former trumps the latter. However, that assumption is incorrect. In *Harris v Shearson Hayden Stone*, this Court held that 'the interests favoring arbitration should prevail over

those favoring the class action, both in general and in the present instance' " (308 AD2d at 67 [citations omitted]).

Although, as the majority notes, *Harris* was decided prior to the advent of FINRA and its predecessor National Association of Securities Dealers (NASD), its rationale is still applicable under the circumstances of this case. *Harris* specifically found that, in a conflict between a purported class action and a valid arbitration agreement, the "strong public policy which underlies arbitration" must prevail (82 AD2d at 92). While it is true that FINRA's exception for class actions was not involved in *Harris*, the principle that class actions are procedural vehicles to enforce the substantive law is unchanged. Indeed, *Harris*, in quoting from *Vernon v Drexel Burnham & Co.* (52 Cal App 3d 706, 716, 125 Cal Rptr 147, 153 [1975]) astutely observed that "[a]ltering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going" (82 AD2d at 95). In effect, the majority is doing just that—substituting a procedural device in place of a substantive one.

This rationale is particularly applicable here. A basic reading of the four corners of Form U-4 and the FINRA rules leads to the conclusion that the claims being asserted by plaintiffs are arbitrable. Simply styling a complaint as a class action in order to bring it within an exception to arbitration elevates form over substance and essentially negates the strong public policy in favor of arbitration as stated in *Harris* and a legion of other cases. Plaintiffs are merely utilizing the procedural device of a class action to circumvent their obligations under substantive contractual law to arbitrate their overtime claims. Having been thwarted at the federal level, they are now attempting to pull off the same charade in state court. As in the federal court, such an attempt should not be permitted.

If these plaintiffs are permitted to evade their obligations under Form U-4 and the FINRA rules by getting a few other potential plaintiffs to sign on to their complaint and thus refer to themselves as a "class," other plaintiffs could and would follow suit with other issues covered by FINRA rules and Form U-4. This would completely eviscerate the purpose of the arbitration rules and create litigation in cases which should be, and have been, the subject of mandatory arbitration. This not only runs afoul of the intent of the FINRA rules, but also negates the requirements of CPLR 901 (a). In short, the major-

ity is throwing open the floodgates of litigation in the securities industry, as well as potentially creating an unwarranted exception to other validly enforceable arbitration agreements. There is no basis for doing so.

GONZALEZ, P.J., and TOM, J., concur with ROMÁN, J.; SWEENY, J., dissents in part in a separate opinion in which RENWICK, J., concurs.

Order, Supreme Court, New York County, entered June 13, 2011, affirmed, with costs.