(August 11, 2016)

■ BGC Notes, LLC, Appellant, v Kevin J. Gordon, Respondent. [36 NYS3d 130]—

Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered July 15, 2015, which denied the motion of plaintiff BGC Notes, LLC for summary judgment in lieu of a complaint, and granted defendant's motion to compel arbitration and to stay the action, unanimously affirmed, without costs.

Nonparty BGC Financial is a securities broker-dealer and a member of the Financial Industry Regulatory Authority, Inc. (FINRA); BGC Notes is an affiliate of BGC Financial. BGC Notes is not itself a member of FINRA, but some of its affiliates, such as BGC Financial, are members. Similarly, defendant Kevin J. Gordon is a FINRA-registered broker.

In 2011, BGC Financial recruited Gordon to become a broker

on its asset-backed swaps desk, and in August of that year, Gordon and BGC Financial entered into an employment agreement to memorialize the terms of Gordon's employment. Under the terms of the employment agreement, Gordon was to receive a $700,000 signing bonus to be structured as an employee-forgivable loan and was to remain an employee of BGC Financial for five years, until April 2017. With respect to the $700,000 loan, the employment agreement stated that BGC Financial would "cause" its affiliate, BGC Notes, to make to Gordon a one-time loan "[i]n consideration for services [to be] performed" by Gordon, and "as consideration for [Gordon]'s consent to enter this [employment agreement]." The employment agreement went on to provide that the terms and conditions of the repayment of that loan would be set forth in "the applicable promissory note." The employment agreement also contained a broad arbitration provision providing that "any disputes, differences or controversies" arising under the employment agreement or from "[Gordon]'s employment" would be subject to FINRA arbitration.

At the same time that he signed the employment agreement in August 2011, Gordon also entered into a cash advance distribution agreement and promissory note with BGC Notes. The note contemplated that Gordon would eventually earn limited partnership interests in BGC Holdings, L.P., another one of BGC Financial's affiliates. Under the note's terms, the periodic principal and interest due on the loan were to be paid from Gordon's anticipated net partnership distributions, and the annual interest was set at the then-prevailing federal rate of 1.15%. The note also provided that BGC Notes would be entitled to accelerate the loan if Gordon failed to become a partner of BGC Holdings within 90 days of beginning his employment, or if Gordon ceased to be a partner of BGC Holdings before the employment agreement expired.

The note, unlike the employment agreement, provided for resolution of related disputes by the New York State courts rather than by arbitration. Specifically, the note stated that "all disputes arising" from the note were to be litigated in the New York State courts. The parties also expressly agreed that the note was "an agreement for the payment of money only" subject to enforcement under CPLR 3213—that is, the provision of the CPLR providing for a motion for summary judgment in lieu of a complaint.

Gordon did not begin working at BGC Financial until April 16, 2012, eight months after signing the employment agreement and the note. In accordance with the note, BGC Notes

advanced Gordon the $700,000 loan several weeks later. While working at BGC Financial, Gordon was presented with the opportunity to sign a limited partnership agreement with BGC Holdings, but he declined to do so. BGC Notes contends that BGC Holdings allocated the partnership units to Gordon regardless of his failure to sign the partnership agreement because BGC Holdings anticipated that Gordon would sign the partnership agreement in the future.

In November of 2012, around six months after starting his employment with BGC Financial and nearly five years before the end of the term set forth in the employment agreement, Gordon resigned to join Credit Suisse, one of BGC Financial's largest customers. Gordon maintained that he had intended to work for BGC Financial for the full term of his employment agreement, but that he left because of certain disagreements between him and BGC Financial. For example, Gordon stated, BGC Financial had been unable to negotiate a timely buyout of his noncompetition agreement with his previous employer, thus costing Gordon approximately $1 million. Gordon also contends that BGC Financial had not, as it had promised, fully reimbursed him for the costs and expenses incurred in negotiating and coming to a settlement with his former employer. Nonetheless, Gordon continued to refer business to BGC Financial during his one-and-a-half-year employment with Credit Suisse, and claimed that those referrals resulted in at least $1 million in commissions to BGC Financial.

Gordon apparently did not make any payments toward the note after he left BGC Financial. In June 2014, when the total outstanding balance on the note was $704,063, BGC Notes commenced this action by way of summary judgment in lieu of a complaint under CPLR 3213, purportedly under the terms of the note (the BGC action). A month later, in July 2014, Gordon filed his own proceeding before FINRA against BGC Financial, BGC Notes, and others, seeking damages for, among other things, defamation and breach of his employment agreement. Further, Gordon moved in the BGC action to compel arbitration and for a stay of the BGC action pending a ruling in the FINRA arbitration.

The IAS court denied BGC Notes' motion for summary judgment. Additionally, the IAS court granted Gordon's motion for a stay of the BGC action and directed BGC Notes to arbitrate the note's enforcement as part of the FINRA arbitration. In so doing, the IAS court found that BGC Notes should be compelled to arbitrate because it had received "direct benefits" flowing from the employment agreement containing an arbitration clause.

The motion court correctly ordered BGC Notes to arbitrate its claims against Gordon in accordance with the terms of Gordon's employment agreement with BGC Financial. Although BGC Notes was not a signatory to the employment agreement, which is the document actually containing the arbitration provision, BGC Notes nonetheless received a "direct benefit" directly traceable to the employment agreement (*Life Tech. Corp. v AB Sciex Pte. Ltd.*, 803 F Supp 2d 270, 275 [SD NY 2011]; *Matter of Belzberg v Verus Invs. Holdings Inc.*, 21 NY3d 626, 631 [2013]). Specifically, section 3 (d) of the employment agreement provides that BGC Financial would "cause" BGC Notes to make a loan to Gordon by way of the very note that BGC Notes sues upon in this action, and BGC Notes received all the benefits that an entity ordinarily receives upon the giving of a loan (*see Mark Ross & Co., Inc. v XE Capital Mgt., LLC*, 46 AD3d 296, 297 [1st Dept 2007]). Thus, BGC Notes derived benefits from the employment agreement, and BGC Notes' contention that section 3 (d) conferred a benefit only to Gordon, and at most an "indirect" benefit to BGC Notes itself, belies the terms of the employment agreement (*Life Tech. Corp.*, 803 F Supp 2d at 276).

Likewise, we reject BGC Notes' argument that it cannot be compelled to arbitrate because it is not subject to FINRA's jurisdiction. FINRA routinely hears arbitrations brought by customers of securities firms that are not FINRA members, and FINRA's procedures permit nonmember parties to submit to FINRA arbitration even when they do not fall under FINRA's rules on mandatory arbitration. Moreover, BGC Notes may not do indirectly what it is forbidden to do directly—namely, divest an employee of his right under the FINRA Rules to arbitrate employment disputes. Here, Gordon entered into the note as part of his compensation package and as directly provided for in the employment agreement, and his decision to end his employment directly relates to his default on the note. Indeed, FINRA Rule 13806 establishes promissory note proceedings for disputes surrounding employee-forgivable loans like the note here. Thus, despite BGC Notes' assertion to the contrary, this action does not bear a mere tangential relation to the employer-employee relationship between BGC Financial and Gordon.

Given the foregoing, the IAS court correctly denied BGC Notes' motion. Concur—Friedman, J.P., Acosta, Moskowitz, Kapnick and Gesmer, JJ.