## Duncan v United Capital Fin. Advisors, LLC

2024 NY Slip Op 31498(U)

April 26, 2024

Supreme Court, New York County

Docket Number: Index No. 651542/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------------------X

MICHAEL SCOTT DUNCAN, DWAYNE GRADY, CAROLINE GIRGIS, MARK ULICNY, ALAN MCCLAIN, AMANDA PILKERTON, STANLEY DYL, KIMBERLY CHMIELEWSKI, and PAUL JARVIS,

<table>
<tr><td>INDEX NO.</td><td>651542/2024</td></tr>
<tr><td>MOTION DATE</td><td>03/28/2024</td></tr>
<tr><td>MOTION SEQ. NO.</td><td>001</td></tr>
</table>

Petitioners,

- v -

**DECISION + ORDER ON MOTION**

UNITED CAPITAL FINANCIAL ADVISORS, LLC,

Respondent.

-------------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (MS001) 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 64, 65, 76, 77, 78, 79, 80, 81, 82, 83, 84, 92
were read on this motion to/for                    INJUNCTION/RESTRAINING ORDER                    .

Petitioners Michael Scott Duncan, Dwayne Grady, Caroline Girgis, Mark Ulicny, Alan McClain, Amanda Pilkerton, Stanley Dyl, Kimberly Chmielewski, and Paul Jarvis (collectively, petitioners) bring this action pursuant to Sections 2 and 4 of the Federal Arbitration Act (FAA) and Article 75 of the CPLR against respondent United Capital Financial Advisors, LLC (UC) to compel UC to arbitrate petitioners' claims and defenses, as well as its own claims and defenses, before the Financial Industry Regulatory Authority (FINRA) and to enjoin arbitration proceedings initiated by UC before the American Arbitration Association (AAA). Presently before the court is petitioners' motion, by order to show cause, for an order granting petitioners' request for a preliminary and permanent injunction to compel arbitration before FINRA and enjoying arbitration before AAA (*see* NYSCEF # 65). UC opposes the motion. For the following reasons, petitioners' motion is denied.

## Background

### *Factual Background*

The following facts are drawn from petitioners' petition pursuant to Sections 2 and 4 of the Federal Arbitration Act and Article 75 of the CPLR, and the accompanying exhibits submitted by the parties in connection with petitioners' application.

**651542/2024   DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No.  001**

**Page 1 of 12**

[* 1]

Petitioners are wealth manager advisers who were formerly employed by United Capital Financial Advisors (UC) and non-parties Goldman Sachs & Co. (Goldman Sachs) and The Ayco Company, L.P. (Ayco) (NYSCEF # 1 – Petition at pp 1-2, 5). UC is a large investment adviser registered with the SEC and New York State Department of Law (*id.* ¶ 5). Although Goldman is a broker-dealer member of FINRA, UC is not (*id.* at p 5).

At various points between January 1, 2014, and January 1, 2023, petitioners entered into "Head of Office Agreements" and/or "Wealth Advisor Agreements" (the Agreements) in connection with petitioners' employment with UC and Ayco (who were doing business together as Goldman Sachs Personal Financial management) (*see* Petition ¶ 13; NYSCEF #s 4-11; *see also* NYSCEF # 78). As is relevant to the present dispute, the Agreements contained a provision related to "Dispute Resolution" (Petition ¶ 16). Section 6.1 provided that "any dispute, controversy or claim arising out of or based upon or relating in any way to th[e] Agreement[s] . . . will be settled by arbitration" (NYSCEF # 4 § 6.1). Section 6.1 further provided that "[a]ny such arbitration will be conducted in New York City before the rules then-obtaining of [FINRA]," but "[i]f the matter is not arbitrable before FINRA, it will be arbitrated before the [AAA]" (*id.*). Section 6.2, in turn, states that "to the extent there is a question of enforceability of this Agreement arising from a challenge to the arbitrator's jurisdiction or to the arbitrability of a claim, such question shall be decided by a court and not an arbitrator" (*id.* § 6.2).

At the time petitioners entered into the Agreements, UC and Ayco were both subsidiaries of Goldman Sachs (*see, e.g.*, NYSCEF # 5 at Recital). However, on August 28, 2023, Goldman Sachs announced the sale of UC to Creative Planning, LLC (*see* NYSCEF # 13 ¶ 3). Shortly after, between September 27, 2023, and October 6, 2023, petitioners each resigned from their employment with UC (*see* NYSCEF #s 13-17). As a result, to enforce its rights under the Agreements (including restrictive covenants contained therein), UC, together with its then-parent Goldman Sachs, initiated five separate arbitrations in FINRA against petitioners (*see* Petition ¶¶ 17-18; NYSCEF #s 13-17).

Concurrently with each Statement of Claim filed with FINRA, UC, together with Goldman Sachs, filed FINRA's standard form "Submission Agreement" (Petition ¶ 19; NYSCEF #s 18-22). On each Submission Agreement, UC and Goldman Sachs "hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure" (Petition ¶ 20; NYSCEF #s 18-22). After UC and Goldman Sachs filed their Statement of Claim and Submission Agreement, FINRA notified petitioners that they were "required by FINRA rules to arbitrate this dispute" (Petition ¶ 22).

651542/2024   DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC
Motion No.  001

Page 2 of 12

2 of 12

[* 2]

On November 3, 2023, the sale of UC to Creative Planning closed. The following month, on December 19, 2023, Goldman Sachs informed FINRA and petitioners that it was withdrawing its claims (NYSCEF # 79). That same day, FINRA confirmed receipt of the withdrawal notice and indicated to the parties that "if Goldman is removed as an active party, the case cannot proceed under the Industry Code pursuant to Rule 13200" unless the remaining parties met the conditions for bringing a dispute between investors and non-FINRA member investment advisers (NYSCEF # 80). Those conditions included the investor and investment adviser submitting a "post-dispute agreement to arbitrate" and the investor filing a "special written FINRA Arbitration Submission Agreement to submit the dispute to FINRA Office of Dispute Resolution" (NYSCEF # 81). The "special written" Submission Agreement had to be "[s]igned by all parties to the arbitration" and "[s]igned after the events occurred that gave rise to the underlying dispute" (*id.*).

On January 4, 2024, UC responded to FINRA that it "does not agree to arbitrate this dispute in the FINRA Dispute Resolution Services forum" and would "pursue its claims in another forum" (Petition ¶ 35; NYSCEF #s 23-27). Then, on January 12, 2024, petitioners filed their Statements of Answer and Counterclaims, as well as FINRA's standard form Submission Agreement (Petition ¶¶ 23-24, 36; NYSCEF #s 28-32). Despite this, on February 7, 2024, FINRA determined, over petitioners' objections, that the case had been withdrawn without prejudice (Petition ¶ 37; NYSCEF # 33-37, 58). The next day, petitioners commenced five new FINRA arbitration proceedings restating their counterclaims and third-party claims as direct claims (Petition ¶ 38). These cases were accepted by FINRA, who began administering the pending FINRA arbitrations and notifying Goldman and UC that they were "required by FINRA rules to arbitrate this dispute," to file a signed and dated Submission Agreement, and to answer by April 1, 2024 (*id.* ¶¶ 39-40; NYSCEF #s 38-42, 49-57).

On February 28, 2024, UC objected to being named as a respondent in petitioners' action, noting that petitioners' claims involved an "industry dispute" between a non-member investment adviser and its employees, which will only be accepted on a voluntary basis by FINRA if the parties submit a post-dispute agreement and a special written FINRA Submission Agreement (NYSCEF # 43). That same day, UC commenced an arbitration proceeding with AAA (Petition ¶ 43). The next month, on March 20, 2024, AAA sent petitioners a notice that it had accepted UC's Statement of Claim and that Answers were required by April 4, 2024 (*id.* ¶ 45; NYSCEF # 48).

*Procedural Posture*

Petitioners commenced this action on March 26, 2024, and that same day filed its motion, by order to show cause, for a preliminary injunction (NYSCEF #s 1, 2, 64). By letter, dated March 28, 2024, the parties notified the court that they had

agreed to extend the imminent answering deadlines for the underlying arbitral proceedings until April 30, 2024, and offered a proposed revised briefing schedule for petitioners' motion (*see* NYSCEF # 66). The court soon after entered that schedule on March 29, 2024 (*see* NYSCEF # 67). Oral arguments on petitioners' motion were then held on April 25, 2024.

## *Parties' Arguments*

### A. *Petitioners' Opening Brief*

In support of their motion, petitioners first address the likelihood of success on the merits of their claim. Petitioners maintain that the plain language of the Agreements "unequivocally require[s] arbitration of employment disputes" before FINRA and that AAA is only available "[i]f the matter is not arbitrable before FINRA" (MOL at 16). And although UC has advanced "self-serving assertions" that it does not consent to having petitioners' claims be arbitrated before FINRA and has refused to sign a post-dispute submission, petitioners maintain that UC's position does not negate the plain language of the Agreements (*id.* at 16-17). Specifically, petitioners contend, the term "arbitrable" simply means that a dispute is one that is specifically prohibited from being heard before FINRA (*id.* at 17). By contrast, FINRA routinely hears arbitrations brought by customers of securities firms that are not FINRA members (*id.*). Petitioners further note that the Agreements' arbitration provisions do not contain any express carve out permitting UC to unilaterally refuse FINRA's jurisdiction (*id.* at 18).

Petitioners otherwise maintain that UC's five affirmative actions filed with FINRA in 2023 confirm FINRA's jurisdiction (MOL at 18-19). As petitioners maintain, UC's Submission Agreements constitute a clear and unqualified agreement to arbitrate, and as a result, it should be precluded from now claiming that FINRA was an improper forum for its claims (*id.* at 19). In essence, petitioners contend, UC has waived any objection to FINRA jurisdiction (*id.*).

As for irreparable harm, petitioners maintain that they would suffer irreparable harm if being forced to arbitrate in a forum to which they did not agree (MOL at 20-21). They further note that allowing the AAA action to go forward would threaten increased costs and inconsistent rulings because they would be litigating nearly identical claims in AAA and FINRA (*id.* at 21-22). And for largely the same reasons supporting a finding of irreparable harm, petitioners maintain that the balance of equities tip in their favor (MOL at 22-23).

### B. *UC's Opposition*

In opposition, UC maintains that FINRA has already declined to hear disputes between UC and petitioners because of FINRA's requirement that parties agree to arbitrate in FINRA through a post-dispute agreement (NYSCEF # 76 –

**651542/2024 DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No. 001**

**Page 4 of 12**

[* 4]

4 of 12

Opp at 15). But, as UC notes, no such agreement exists (id.). Accordingly, the parties' dispute is not arbitrable before FINRA because FINRA is unable to hear the dispute without its consent (id.). UC maintains that contrary to petitioners' claims of "bad faith" and "frivolous" conduct, it has taken steps that it is entitled to take by declining to agree to post-dispute agreements to arbitrate (id.).

Addressing petitioners' claim that UC's Submission Agreements submitted in 2023 (prior to UC withdrawing its claims) reflects a clear and unqualified agreement to arbitrate in FINRA, UC points out that the Submission Agreement has no bearing on the present dispute for two reasons (Opp at 15). First, UC indicates that the Submission Agreements were revoked before petitioners agreed to them, so there was no contract formed between the parties (id. at 15-16). Second, even if the Submission Agreements were binding, they would have only related to the statement of claim filed by Goldman Sachs and UC, not the counterclaims and third-party actions that were filed by petitioners in January 2024, and then re-filed as standalone actions in February 2024 (id. at 16).

UC separately argues that petitioners' interpretation of the Agreements' arbitration provisions violates fundamental contract law principles (Opp at 17-18). As UC explains, pursuant to the Agreements, UC agreed to arbitrate before FINRA only if the dispute is arbitrable before FINRA (id. at 18). UC further notes that there are no other conditions, such as submitting to a post-dispute arbitration agreement, to make an otherwise un-arbitrable dispute arbitrable in FINRA (id.). As UC explains, petitioners' reading would render superfluous that portion of the Agreements' arbitration provision that designates AAA as an alternative forum if a matter is not arbitrable before FINRA because, under petitioners' interpretation, almost every dispute that falls within the arbitration agreement arguably be arbitrable before FINRA (id. at 18-19).

Finally, UC contends that petitioners' concerns about "piecemeal litigation" are unavailing because the court must ultimately interpret the Agreement as it is written and without regard to any purported inconvenience that petitioners may experience by litigating claims against different entities in different forums (Opp at 19-20). On this point, UC further notes that it is simply arguing that it is not subject to FINRA, but it is not stopping petitioners from pursuing their claims against Goldman Sachs in FINRA (id.).

### C. Petitioners' Reply

Petitioners, in reply, argue that their claims against UC are arbitrable in FINRA because they are capable of being arbitrated in that forum (NYSCEF # 92 – Reply at 3). UC's refusal to sign a post-dispute submission agreement does not mean that the dispute is not arbitrable (id.).

**651542/2024   DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No.  001**

**Page 5 of 12**

5 of 12

Responding to UC's opposition, petitioners first contend that UC has falsely asserted that FINRA already determined that the parties' disputes are not arbitrable because FINRA merely acknowledged Goldman and UC's voluntary withdrawal (Reply at 3-4). Petitioners instead reiterate that FINRA has accepted petitioners' statement of claim, docketed them, and notified UC that it is required to arbitrate this dispute in FINRA (*id.* at 4). Accordingly, as it relates to the disputes currently pending, FINRA has not made any determination on arbitrability (*id.*). In any event, petitioners maintain, it is this court, and not FINRA, who determines issues of arbitrability under Section 6.2 of the Agreements (*id.*).

Petitioners next respond to UC's argument that its Submission Agreements are not binding because they only related to the matters set forth in Goldman Sachs and UC's Statement of Claims (Reply at 6). On this point, petitioners note that the full language of the Submission Agreement indicates that "the present matter in controversy" encompasses "the attached statement of claims, answers, and all related cross claims, counterclaims, and/or third-party claims which may be asserted" (*id.*). Accordingly, petitioners aver, UC's Submission Agreement expressly encompassed the claims that are currently pending before FINRA (which were previously filed as counterclaims) (*id.*). Finally, petitioners argue, the signed Submission Agreement constitutes an express admission that its claims were arbitrable, and whether petitioners effectively accepted the Submission Agreements is beside the point (*id.* at 6-7). And insofar as the Submission Agreements constituted an "offer," petitioners maintain that they "accepted" that offer upon filing the counterclaims and then re-filing those counterclaims as affirmative claims (*id.* at 7-8).

Turning to UC's contract interpretation arguments, petitioners maintain that UC is claiming a "unilateral" right to refuse to arbitrate in FINRA, which is a contractual right to which petitioners never agreed (Reply at 8). In petitioners' view, UC's reading would make the arbitration clause of the Agreements a "Trojan Horse" carrying within it the possibility that whenever employees sue Goldman and UC in FINRA, UC could splinter off and assert its own claims in AAA (*id.*). Petitioners further argue that contrary to UC's position, there is a requirement in the Agreements that UC must agree to a post-dispute agreement to arbitrate based on the FINRA rules that require a party starting an action in FINRA to submit a Submission Agreement at the outset of the arbitration (*id.* at 9). Finally, on the issue of litigating disputes in different forums, petitioners contend that the Agreements' arbitration provision does not contain any language requiring bifurcation (*id.*). Rather, petitioners aver, the Agreements require that there be only one forum (*id.*).

**651542/2024  DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No.  001**

**Page 6 of 12**

[* 6]

6 of 12

## Legal Standard

"The provisional remedy of a preliminary injunction in New York civil actions is governed by CPLR 6301" (*Credit Agricole Indosuez v Rossiyskiy Kredit Bank*, 94 NY2d 541, 544 [2000]), which provides in relevant part:

> A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff. . . .

(CPLR 6301).

"The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual" (*1650 Realty Assocs., LLC v Golden Touch Mgmt., Inc.*, 101 AD3d 1016, 1018 [2d Dept 2012]). That said, the "remedy of granting a preliminary injunction is a drastic one which should be used sparingly" (*McLaughlin, Piven, Vogel, Inc. v W.J. Nolan & Co.*, 114 AD2d 165, 172 [2d Dept 1986]). "A preliminary injunction substantially limits a defendant's rights and is thus an extraordinary provisional remedy requiring a special showing. . . . [It] will only be granted when the party seeking such relief demonstrates a likelihood of ultimate success on the merits, irreparable injury if the preliminary injunction is withheld, and a balance of equities tipping in favor of the moving party" (*1234 Broadway LLC v West Side SRO Law Project*, 86 AD3d 18, 23 [1st Dept 2011], citing *Doe v Axelrod*, 73 NY2d 748 [1988]). Whether to grant a preliminary injunction is "committed to the sound discretion of the motion court" (*Harris v Patients Med., P.C.*, 169 AD3d 433, 434 [1st Dept 2019]).

## Discussion

Resolution of petitioners' motion for a preliminary injunction centers around whether the claims by and against UC are arbitrable before FINRA. Although it is a close call, based on the current record before the court, it does not appear that the parties' "matter[s]" are presently arbitrable. Accordingly, as explained below, petitioners have failed to establish a likelihood of success on the merits of its Petition.

Both parties agree that "the Federal Arbitration Act governs interpretation and enforcement of all arbitration provisions under th[e] Agreement[s]" (*see, e.g.*, NYSCEF # 14). Pursuant to Section 2 of the FAA, a "written provision in . . . a

**651542/2024  DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No. 001**

Page 7 of 12

[* 7]

7 of 12

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable" (*O'Sullivan v Jacaranda Club, LLC*, 224 AD3d 629, 630 [1st Dept 2024]). Accordingly, "'[w]here parties enter into an agreement and, in one of its provisions, promise that any dispute arising out of or in connection with it shall be settled by arbitration, any controversy which arises between them and is within the compass of the provision must go to arbitration'" (*Giahn v Giahn*, 290 AD2d 483, 483-484 [2d Dept 2002]) [citation omitted]).

Petitioners' application also invokes Article 75 of the CPLR, whose terms are, for purpose of this application, largely the same as the FAA (*see Smith Barney, Harris Upham & Co., Inc. v Luckie*, 85 NY2d 193, 205-206 [1995] [recognizing that FAA was modeled after Article 75 of the CPLR]; *Brean Capital, LLC v NewOak Capital LLC*, 46 Misc 3d 1203[A], at *2 [Sup Ct, NY County, 2014] ["the applicable federal and New York law is basically the same, namely a liberal public policy in favor of arbitration, the principle that a party cannot be forced to arbitrate unless they agreed to do so by contract, and that the existence of an agreement to arbitrate is a question for a court, not the arbitrator"]). Specifically, like the FAA, under CPLR 7503(a), courts must direct the parties to arbitrate if "there is no substantial question whether a valid agreement was made or complied with and the claim sought to be arbitrated is not barred by limitation" (CPLR 7503[a]; *Protostorm, Inc. v Foley & Lardner LLP*, 193 AD3d 486, 487 [1st Dept 2021] ["Where there is no substantial question whether a valid agreement [to arbitrate] was made or complied with, . . . the court shall direct the parties to arbitrate" and its order "shall operate to stay a pending . . . action"]). The burden is on the party seeking arbitration to demonstrate a "clear and unequivocal" agreement to arbitrate the claim (*Gerling Global Reins. Corp. v Home Ins. Co.*, 302 AD2d 118, 123 [1st Dept 2002]).

At the outset, an investment adviser who is not a FINRA member cannot be compelled to arbitrate solely under the FINRA Rules alone (*see Oppenheimer & Co. Inc. v Deutsche Bank AG*, 2010 WL 743915, at *1 [SD NY Mar. 2, 2010, No. 09 Civ. 8154(LAP)]; *Ayco. L.P. v Frisch*, 2012 WL 42134, at *6 [ND NY Jan. 9, 2012, No. 1:11-CV-580 (LEK/DRH)]). Indeed, Rule 13200 only requires for disputes to be arbitrated before FINRA "if the dispute arises out of the business activities of a member or an associated person and is between or among" members, members and associated persons, or associated persons, or, in the context of Rule 12200, if a dispute is between a customer and a FINRA member or associated person. That said, courts have recognized that parties can explicitly agree to arbitrate their claims before a specific forum (*see Merrill Lynch, Pierce, Fenner & Smith, Inc. v Georgiadis*, 903 F2d 109, 113 [2d Cir 1990] ["Where, as here, the parties have agreed explicitly to settle their disputes only before particular arbitration fora, that agreement controls"]). And although UC may not be a member of FINRA, the First Department has recognized that "FINRA routinely hears arbitrations brought by customers of securities firms that are not FINRA members" (*see BGC Notes, LLC v Gordon*, 142 AD3d 435, 438 [1st Dept 2016]). As a result, courts routinely recognize

**651542/2024   DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No.  001**

**Page 8 of 12**

that a non-member can still agree to arbitrate before FINRA pursuant to a written agreement (*see, e.g.*, *Windsor St. Capital, L.P. v Syren Capital Advisors, LLC*, 2022 WL 10626362, at \*4 [Sup Ct, NY County, Oct. 18, 2022] [rejecting argument that non-member could not arbitrate before FINRA "given the existence of a written arbitration agreement, FINRA's jurisdiction over former members for matters arising during the period of their membership, and the other factors set forth above"]; *Owen May and MD Global Partners LLC v Gibbs*, 2021 WL 3932230, at \*2 [Sup Ct, NY County, Sept. 2, 2021] ["Further, there is nothing in the FINRA rules preventing a non-FINRA-registered person to arbitrate before FINRA"]).

Here, the parties agree that UC is not a FINRA member. Petitioners, however, contend that even if UC is not a member of FINRA, it explicitly agreed to arbitrate before FINRA as part of the Agreements' arbitration provision. As noted above, each of the arbitration provisions at issue provide that "[a]ny such arbitration [between the parties] will be conducted in New York City before the rules then-obtaining of [FINRA]" (Agreements § 6.1). And it is only "[i]f the matter is not arbitrable before FINRA," that it will then be arbitrated before AAA (*id.*). Pointing to this language, petitioners maintain that the issue of whether a matter is "not arbitrable before" FINRA is narrowly confined to those cases that FINRA has deemed non-arbitrable by a FINRA Rule—e.g., class or collective actions claims, which are prohibited by FINRA Rule 13204 (*see* MOL at 17; *see generally Gomez v Brill Secs., Inc.*, 95 AD3d 32, 37 [1st Dept 2012] ["Accordingly, based on the parties" own agreement, which incorporates by reference FINRA Rule 13204(d), arbitration of this class action suit is barred"]). Petitioners maintain that, when coupling these facts with the fact that UC (together with Goldman Sachs) originally filed Submission Agreements with its Statements of Claims, UC expressed a clear intent to arbitrate before FINRA.

UC, by contrast, takes a broader view of the issue of arbitrability under the Agreements. As it puts it, FINRA can also determine whether it will hear a given case, and its refusal to hear a case renders that matter non-arbitrable before FINRA (*see* Opp at 12-13). It then contends that FINRA has already concluded that the parties' dispute is not arbitrable before FINRA because (1) FINRA's own guidelines mandate that disputes between investors and non-member investment advisers will only be accepted on a "voluntary, case-by-case basis if the parties meet" certain delineated conditions (*see* NYSCEF # 81 – FINRA Guidance); (2) FINRA represented, upon Goldman Sachs's withdrawal of its claims, that the dispute between petitioners and UC "cannot proceed" unless if the parties met the conditions set forth in FINRA's guidelines (NYSCEF # 80); and (3) after UC responded to FINRA's correspondence by indicating that it would not consent to arbitrating before FINRA, FINRA deemed the case "withdrawn without prejudice" (*see* NYSCEF #s 23-27, 33-39).

Whether to compel arbitration before FINRA and stay arbitration before the AAA is ultimately a close call. Nonetheless the record appears to more persuasively

**651542/2024  DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No.  001**

**Page 9 of 12**

[\* 9]

9 of 12

support a conclusion that UC properly re-filed its claims before AAA and cannot be compelled to arbitrate petitioners' claims before FINRA. It is true that nothing in the FINRA Rules explicitly prohibit non-members from arbitrating at FINRA, and the Agreements between petitioners and UC do generally mandate that claims be arbitrated before FINRA. The FINRA Guidelines, however, establish that non-members must generally consent to FINRA's jurisdiction and submit certain post-dispute agreements reflecting that consent (*see* NYSCEF # 80). That is why, relying on these rules and guidelines, FINRA determined that the action could not continue absent a post-dispute agreement from UC. And when UC indicated that it would withhold its consent, FINRA deemed the original action filed by Goldman Sachs and UC as withdrawn even after petitioners filed their answers and counterclaims and notwithstanding their objections. Accordingly, FINRA, which was relying on the same record that is currently before the court, seemingly declined to make its forum available to the parties' dispute and will refuse to do so without obtaining UC's consent to proceed as a non-member (*see* FINRA Rule 13203 [noting that FINRA director may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate"]; *cf. Prudential Equity Grp., LLC v Estate of Amiouny*, 49 AD3d 437, 437 [1st Dept 2008] [noting that, under prior FINRA (formerly NASD) Rule 10101, claims arising out of business of non-members were "not eligible for arbitration"]; *Clinton v Oppenheimer & Co. Inc.*, 824 F Supp 2d 476, 485 [SD NY 2011] [observing that FINRA Rule 13201 allows for discrimination suits to be arbitrated before FINRA "if the parties have agreed to arbitrate it, either before or after the dispute arose"]). These facts, viewed in their totality, support a conclusion that, notwithstanding any pre-dispute agreement to arbitrate before FINRA pursuant to the Agreements, the parties' claims are not presently "arbitrable before" FINRA under the "rules then-obtaining" (as well as FINRA's own formal guidance) and hence, under the Agreements, AAA is the relevant forum for the parties to litigate their claims.

None of the cases cited by petitioners support a different conclusion. For example, in *BCG Notes, LLC v Gordon*, the employment agreement at issue between plaintiff's affiliate and defendant contained a "broad arbitration provision" that provided that "any disputes, differences or controversies" arising under the employment agreement "would be subject to FINRA arbitration" (142 AD3d at 436). Unlike here, there was no limitation tied to whether claims were "arbitrable" before FINRA (*see id.*). Nor was there any alternative forum selected if a claim was "not arbitrable" (*see id.*). Moreover, although the court rejected plaintiff's argument that it was not subject to FINRA's jurisdiction because it was not a FINRA member, it did so because plaintiff was attempting to divest an employee of their right to arbitrate disputes pursuant to an agreement between defendant and plaintiff's FINRA-member affiliate by invoking plaintiff's non-member status (*id.* at 438). Here, by contrast, FINRA had already allowed UC to withdraw its action after it determined that UC's arbitration proceeding could not proceed without its consent,

[* 10]

and now, consistent with the parties' Agreements, UC is invoking AAA to arbitrate their dispute.

Petitioners' citation to *FIA Card Servs., N.A. v DiLorenzo* is similarly unavailing. In that case, the parties' arbitration provision read that "Arbitration, including selection of an arbitrator, shall be conducted in accordance with the rules for financial service disputes of J.A.M.S./Endispute ('JAMS')" unless JAMS was "unwilling or unable to serve" (*see* 22 Misc 3d 1127[A], at *1 [Dist. Ct., Nassau Cty., 2009]). Despite this provision, petitioner submitted its dispute to the National Arbitration Forum in the first instance, which the court held was improper because, although petitioner "had the option of submitting the dispute . . . to arbitration," it "did not have the option to submit the dispute to arbitration before NAF unless JAMS was unwilling or unable to provide for the arbitration" (*id.* at *6). Here, the parties have a more concrete position from FINRA on what circumstances it will hear claims involving UC given its non-member status, which now brings UC's claims within the ambit of the AAA under the Agreements. Finally, in *Rollins v Goldman Sachs & Co. LLC,* although the arbitration provision in the parties' agreement is like the one at issue here, there was no dispute that plaintiff's claims were arbitrable before FINRA in that case (2019 WL 2754635, at *1, *6 [SD NY July 2, 2019, No. 18 Civ. 7162 (ER)]).

Petitioners also contend that, notwithstanding FINRA's determinations, UC has consented to FINRA arbitration by virtue of the signed Submission Agreements it originally submitted upon commencing arbitration proceedings before FINRA in October 2023 (MOL at 19-20; Reply at 6-7). But as the record indicates, those Submission Agreements were filed with Goldman Sachs, and once Goldman Sachs withdrew its claims, UC declined to consent to jurisdiction and thereby revoked its agreement to arbitrate before FINRA (NYSCEF #s 23-27). *Safra Secs., LLC v Gonzalez,* cited by petitioners, is not to the contrary (764 Fed Appx 125 [2d Cir 2019]). In *Safra,* plaintiffs sued defendant to enjoin a pending arbitration initiated against them by defendant before FINRA (*id.* at 125). The district court dismissed plaintiffs' complaint and the Second Circuit affirmed (*id.*). The *Safra* court observed that, although they initially protested FINRA's jurisdiction over defendant's claims, plaintiffs then submitted a signed Submission Agreement explicitly referencing defendant's arbitration claims and explicitly agreed to arbitrate those claims with FINRA. Although plaintiffs later claimed they did not "freely assent" to the submission agreement, the court concluded that plaintiffs failed to plausibly allege a lack of assent in submitting the Submission Agreement (*id* at 126). Here, however, UC explicitly expressed its lack of consent to proceed before FINRA once Goldman Sachs – a FINRA member –withdrew from the proceeding and prior to receiving any Submission Agreements from petitioners. Under these circumstances, there does not appear to be a basis to conclude that the Submission Agreements express a "clear[] and unmistakabl[e]" agreement to arbitrate (*see Metro. Life Ins. Co. v*

**651542/2024  DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No. 001**

**Page 11 of 12**

11 of 12

*Bucsek*, 919 F3d 184, 196 [2d Cir 2019]).[1] Nor is there a basis to conclude that UC definitively waived any challenge to FINRA jurisdiction by filing Submission Agreements (which were, as explained, subsequently withdrawn).

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that petitioners' motion, by order to show cause, for preliminary and permanent injunctive relief is denied; and it is further

ORDERED that petitioners' petition pursuant to the FAA and Article 75 is dismissed; and it is further

ORDERED that petitioners shall serve a copy of this order together with a notice of entry upon respondents and the Clerk of the Court within 10 days of this order; and it is further

ORDERED that the Clerk of the Court enter judgment as written.

| **4/26/2024** | | | | | | |
|---|---|---|---|---|---|---|
| **DATE** | | | | MARGARET A. CHAN, J.S.C. | | |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

---

[1] *Gordon v Royal Palm Real Estate Investment Fund I, LLP*, also cited by petitioners, is similarly unavailing (2011 WL 108917 [ED Mich Jan. 10, 2011, No. 09-11770]). In that case, plaintiff had originally commenced an arbitration before FINRA and filed a Submission Agreement in connection with that action (*id.* at *1-2). Plaintiff then filed a lawsuit that he claimed "contain[ed] claims that [were] substantively different from those pursued in arbitration" (*id.* at *2). The court ultimately concluded that because plaintiff had voluntarily submitted a portion of his claims to arbitration, he could not then stay arbitration and consolidate his claims before the district court (*id.* at *6). Notably, there is no indication that plaintiff in *Gordon* withdrew his arbitration claims or Submission Agreement prior to defendants interposing their response.

**651542/2024  DUNCAN ET AL vs. UNITED CAPITAL FINANCIAL ADVISORS, LLC**
**Motion No.  001**

**Page 12 of 12**